IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SCOTT BOEHM and DAVID STLUKA,

                Plaintiffs,                  OPINION & ORDER

    v.

                                                             14-cv-16-jdp

DAN ZIMPRICH; CIARA ZIMPRICH;
LEGENDS OF THE FIELD, LLC;
SPORTS PLUS, LLC; GAMEDAY SPORTS;
and RICHARD MONCHER,

                Defendants,

    v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY; and ACUITY,
A MUTUAL INSURANCE COMPANY,

                Intervenor Defendants.

---

        Plaintiffs Scott Boehm and David Stluka are professional photographers who specialize in sports photos, which they license on an exclusive basis through agencies such as Getty Images. In this copyright infringement suit, they allege that defendants created photo prints and canvases of their photos without authorization, and that they sold these items through their sports memorabilia shops and kiosks. The Zimpriches and Legends of the Field admit to copying and selling plaintiffs' photos. Sports Plus admits that it acquired at least one of plaintiffs' photos from the Zimpriches and offered it for sale.[1] The number of images used and the number of copies made and sold has not yet been established.

        Two insurance companies have intervened to protect their interests: American Family Mutual Insurance Company (insurer of the Zimpriches) and Acuity (insurer of Sports Plus).

---

[1] Defendants Gameday Sports and Richard Moncher have defaulted, and they are no longer actively participating in the case. Dkt. 49.

Now before the court are several motions for partial summary judgment. Plaintiffs have moved for summary judgment on two issues: (1) that Legends of the Field and the Zimpriches have infringed their copyrights, and (2) that the Zimpriches' infringement was willful. Sports Plus has moved for summary judgment that its infringement, if any, was not willful, thus limiting its damages. American Family has moved for summary judgment that the Zimpriches' policy does not afford coverage for the allegations in the complaint.

The court will grant plaintiffs' motion. Legends of the Field does not genuinely dispute its infringement; it disputes only the number of photos it infringed. The Zimpriches attack the validity of plaintiffs' copyrights and their registrations, but fail to offer any supporting evidence. Thus, infringement by the Zimpriches cannot be genuinely disputed. At least some of the Zimpriches' infringement was willful: the "editorial" license under which the Zimpriches acquired the photos from Getty did not authorize them to create commercial products such as prints and canvases. Although the Zimpriches contend that they never read the actual editorial license, the essential restrictions of the editorial license were apparent on the Getty website during the acquisition process. The court also rejects the Zimpriches' assertion of an advice of counsel defense for their continued infringement during the course of this litigation.

The court will grant Sports Plus's motion. Sports Plus did not make any infringing products; it acquired those products from the Zimpriches. Plaintiffs have adduced no evidence to sustain their burden to show that any infringement by Sports Plus would have been willful.

The court will deny American Family's motion. The complaint alleges that the Zimpriches infringed plaintiffs' copyrights in "advertising and marketing campaigns to promote their businesses and products," Dkt. 33, ¶ 28, thus triggering coverage for advertising injury. Although the complaint alleges generally that defendants' unauthorized use of plaintiffs' work was "willful, intentional, and/or reckless," intent is not an element of copyright infringement.

2

The complaint alleges that some of the Zimpriches' infringement involved a deliberate scheme to acquire editorial licenses under false pretenses, but the complaint also alleges that the Zimpriches acquired some of plaintiffs' photos with no license whatsoever. The complaint does not explain how the Zimpriches acquired copies of those photos, and thus the court will construe the complaint to include a claim for non-willful copyright infringement. The policy exclusion for intentional acts is therefore not applicable to those claims, and thus American Family has a duty to defend the Zimpriches.

## UNDISPUTED FACTS

The following facts are material and, except where noted, undisputed.

Plaintiffs Scott Boehm and David Stluka are professional sports photographers, who work, primarily, NCAA, MLB, and NFL games. Plaintiffs have registered their copyrights to the photographs at issue in this suit, sometimes by means of the group registration process available for photographs.

Until 2012, the relevant period for this case, plaintiffs licensed their photos exclusively through Getty Images (US), Inc. on a "rights-managed" (rather than a "royalty-free") basis. The Getty Images website offered photography, including plaintiffs' photos, under various license types. Each license type allowed different uses and contained different restrictions. Commercial licenses permitted the broadest use and had the highest fee. "Editorial-Newspaper" licenses were significantly less expensive than commercial licenses, but they did not permit the photos to be used to sell anything. The Getty Image Editorial-Newspaper licenses allowed the licensed photo to be used only on the "inside of a newspaper," and they typically expired after a short time, such as a day or a week. The basics of the license type is provided on the Getty Images website

when the photo is acquired. The full license is available on the website, and it is also provided in a confirming email after acquisition.

Defendants Dan and Ciara Zimprich own "On 2 the Field," a sports memorabilia vendor with a store in Madison. The Zimpriches made and sold prints and photo canvases of approximately two dozen of plaintiffs' photographs without authorization. To acquire high-resolution copies of plaintiffs' photos, the Zimpriches established an online account with Getty Images and entered Editorial-Newspaper licenses for plaintiffs' photos. The Zimpriches acknowledge that they received emails confirming the licenses, but they contend that they did not read the licensing agreements and that they were unaware of the restrictions on the use of the photos. The Zimpriches also acquired copies of some of plaintiffs' photos from sources other than Getty Images. The Zimpriches sold some of their finished products with plaintiffs' photos to the other defendants and they displayed the rest in their own store. They continued to offer for sale products with plaintiffs' images for a year after this lawsuit began.

Defendant Legends of the Field sells sports memorabilia through its retail stores. Legends of the Field admits that it displayed copies of at least three of plaintiffs' photos; plaintiffs allege that Legends of the Field infringed six more. It appears that, like the Zimpriches, Legends of the Field entered non-commercial licenses to some of plaintiffs' photos from Getty Images and offered them for sale in its stores. Legends of the Field challenges the admissibility of plaintiffs' evidence of how Legends of the Field acquired plaintiffs' photos, but that issue is not material here.

Defendant Sports Plus also sells sports memorabilia and it purchased at least one copy of a photo-in-suit from the Zimpriches (Bucky Badger doing push-ups at a University of Wisconsin football game), which it displayed for sale in its store. Sports Plus's owner, Paul Leister, contends that he did not know that the Zimpriches would sell an unauthorized copy, and that

4

Dan Zimprich informed him that he had paid a fee allowing him to create the reproductions.[2] When Leister learned that the image was allegedly an infringement—through the filing of this lawsuit—Sports Plus removed the reproduction in its possession from display.

American Family Insurance provides business insurance to the Zimpriches. On March 4, 2014, more than a year after learning of this lawsuit, the Zimpriches notified American Family that they were being sued for both copyright infringement and fraud. Five months later, American Family moved to intervene in this lawsuit to contest its obligation to provide coverage for plaintiffs' claims. The Zimpriches' policy provides coverage for "personal and advertising injury," which is triggered by plaintiffs' complaint, but it excludes coverage for injuries "caused by or at the direction of the insured with the knowledge that the action would violate the rights of another." Dkt. 73.

Plaintiffs filed this suit in the United States District Court for the Southern District of New York, but the case was transferred to this court on December 13, 2013. Dkt. 21. On February 13, 2014, the parties stipulated to a preliminary order enjoining all defendants from creating, displaying, or selling any products featuring plaintiffs' photos throughout the remainder of the action. Dkt. 26. This case arises under federal law, the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*, and thus this court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

---

[2] Plaintiffs contest both statements because they rely on "the self-serving declaration of an interested party." However, plaintiffs offer no alternative version of the facts, as required by the Pretrial Conference Order. Dkt. 31, at 13. They also suggest that Dan Zimprich's statement is inadmissible hearsay. However, the statement is being offered for the effect on the listener and is thus admissible non-hearsay. Fed. R. Evid. 801. The court will therefore accept Sports Plus's proposed facts as undisputed. Dkt.31, at 10.

ANALYSIS

To prove a claim for copyright infringement, a plaintiff must show (1) ownership of a valid copyright, and (2) copying of constituent components of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). In this case the second element—copying—is not contested (although the extent of the copying has not been established). The Zimpriches and Legends of the Field made and sold unauthorized copies of plaintiff's photographs.[3] The Zimpriches challenge the first element—ownership of a valid copyright—but they have no evidence at all to rebut plaintiffs' copyright registrations, which are prima facie evidence of their ownership of valid copyrights. 17 U.S.C. § 410(c); *Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 507 (7th Cir. 1994) ("A certificate of registration from the U.S. Register of Copyrights constitutes prima facie evidence of the validity of a copyright.").

Liability for infringement is not genuinely disputed, but the parties have submitted several issues for determination on summary judgment. Summary judgment is appropriate if a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* A party may not simply rely on the allegations in its pleadings to create such a dispute, but must "demonstrate that the record, taken as a whole, could permit a

---

[3] Sports Plus does not admit copying, but it admits acquiring at least one infringing copy from the Zimpriches, which it offered for sale and displayed publicly in the process. The public display is an infringement, 17 U.S.C. § 106(5), although perhaps one that caused little damage.

rational finder of fact to rule in [its] favor." *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 931 (7th Cir. 1996).

A.  **Plaintiffs' motion for summary judgment**

    1.  **Infringement by Legends of the Field**

Legends of the Field admits to infringing three of plaintiffs' photos: a photo of Ryan Braun shaking hands with Aaron Rodgers, a panoramic photo of Lambeau Field, and a photo of Donald Driver with grass in his helmet. Legends of the Field does not dispute that plaintiffs own valid copyrights of the three photos, that it did not have authorization to use these photos, or that it offered these photos in its store. Because there is no dispute about the facts that demonstrate infringement, summary judgment is appropriate as to those photos.

Plaintiffs contend that Legends of the Field infringed six additional photos. To prove that Legends of the Field displayed these infringing photos in their stores, plaintiff Stluka personally visited Legends of the Field's store and photographed the infringing photos on display. Plaintiffs offered these photos, with a supporting declaration, in support of their claims. Dkt. 78 and Dkt. 80.

Legends of the Field contends that the filename each photo (e.g., On2theField-014.jpg) demonstrates that the photos were actually taken at On 2 the Field, the Zimpriches' store, rather than at a Legends of the Field store. This argument goes nowhere: Stluka's declaration attests that Exhibit 10 includes photos from both On 2 the Field and Legends of the Field, although all the filenames include the prefix "On2theField." Dkt. 80. The filename given to a batch of photos is not determinative of where the photos in the batch were taken. But Legends of the Field has a point: Stluka's evidence is too muddled to demonstrate which photos are from which store. This problem with Stluka's declaration carries over to Boehm's declaration. Thus,

7

plaintiffs' evidence of record is insufficient to establish which photographs demonstrate potential infringement by Legends of the Field.

The court will not grant summary judgment as to the six additional photographs. Although Legends of the Field infringed plaintiffs' copyrights, the extent of that infringement will have to be resolved in a subsequent proceeding.

### 2. Infringement by the Zimpriches

The Zimpriches concede that they made prints and canvases of some of plaintiffs' photos without authorization. Their primary defense to infringement is to attack the validity of plaintiffs' copyrights. The Zimpriches contend that "they have reason to believe that both Boehm and Stluka previously had contracts with other entities, such as the NFL, MLB or the NCAA which would indicate that the works are work-made-for-hire for which an entity, and not these plaintiffs, possesses the copyright to these photographs." Dkt. 116, at 8. But a "reason to believe" is not enough to survive summary judgment, particularly when the Zimpriches have not articulated any reason for thinking that plaintiffs created their work under a work-for-hire agreement and plaintiffs have testified that they did not do so. Dkt. 131, at 2; Dkt. 132, at 2. At this point, it appears that the Zimpriches' infringement defense is nothing more than wishful thinking, and they concede that they cannot rebut plaintiffs' prima facie case of copyright ownership based on their registrations.

Plaintiffs concede, however, that the registration of the Brett Farve/Reggie White photo was made more than five years after first publication, and thus that registration does not give rise to a presumption of validity. 17 U.S.C. § 410(c). The weight given to that registration is within this court's discretion. *Id*. Because the Zimpriches have cited nothing to challenge

plaintiffs' ownership of the Farve/White photo, or the validity of the copyright to that photo, the court will deem plaintiffs' ownership of a valid copyright to that photo to be established.

The Zimpriches' secondary defense to infringement is that they were somehow licensed to use plaintiffs' photographs. The court will consider the Zimpriches' licensing defense, even though they failed to raise it as an affirmative defense in their responsive pleading. Plaintiffs make a decent case that the Zimpriches' failure to plead a license defense affected their discovery efforts, and that the assertion of the license defense for the first time on summary judgment is prejudicial. Accordingly, it would be appropriate for the court to deem the Zimpriches to have forfeited this defense. *Matthews v. Wisconsin Energy Corp.*, 642 F.3d 565, 570 (7th Cir. 2011). Nevertheless, the court will consider the merits of the Zimpriches' licensing defense because it can be disposed of easily.

The Zimpriches do not dispute that the Editorial-Newspaper license they entered did not authorize them to make prints and photo canvases. However, the Zimpriches contend that they did not make prints and photo canvases from every photo they licensed from Getty. According to the Zimpriches, Ciara sometimes rejected the photos that Dan had licensed (and downloaded) as unsuitable for their commercial products. The Zimpriches claim that their use of the photos as candidates for commercial duplication should fall within the scope of the Getty Editorial-Newspaper license. The court rejects this contention, which is not developed with any examination of the Getty license.

The Getty Editorial-Newspaper license entered by the Zimpriches authorizes the licensee to use the licensed photo in the interior of a newspaper with a circulation of less than 10,000. Dkt. 79-11. It also authorizes the use of the photo "in any production process as may be necessary for the intended use." The kind of editorial evaluation (and any necessary duplication of the photo) conducted by Ciara would be within the scope of the license, if it were done for

the purposes of use in a newspaper. But the Zimpriches never intended any such use of the photo. The license authorized them to use the photo "solely to the extent explicitly stated in this Agreement." The court notes, too, that the license is voidable if the licensee provides inaccurate information concerning the proposed use of the work. *Id.*, at section 11.1. In essence, *nothing* the Zimpriches did with plaintiffs' photos was within the scope of the Getty Editorial-Newspaper license because none of their uses were connected in any way with newspaper use. Thus, contrary to the Zimpriches' contention, they did not acquire a *valid* editorial license to plaintiffs' photographs from Getty, and their use of plaintiffs' photos was in all regards a prohibited commercial use.[4] The fact that they did not make and sell commercial products from some of the photos acquired from Getty is a damages question. Plaintiffs are entitled to summary judgment that the Zimpriches' use of their photos is copyright infringement.

### 3. The Zimpriches' Willfulness

Copyright infringement is a strict liability offense: a defendant is liable for infringement regardless of whether he intended to infringe. *Toksvig v. Bruce Pub. Co.*, 181 F.2d 664, 666 (7th Cir. 1950) ("Intention is immaterial if infringement appears."). But a defendant's state of mind can be highly pertinent to damages.

The Zimpriches contend that they were "merely innocent infringers," not willful infringers as plaintiffs contend. An innocent infringer, as that term is used in the Copyright Act, is one who "was not aware *and had no reason to believe* that his or her acts constituted an infringement of copyright." 17 U.S.C. § 504(c)(2) (emphasis added). The Zimpriches bear the

---

[4] The Zimpriches allege that they acquired some of plaintiffs' photos from AW Artworks, LLC, and Jesse Winiecki. Because the Zimpriches address AW Artworks and Winiecki only in the willfulness section of their brief, the court will assume that the Zimpriches concede that they did not acquire valid licenses from AW Artworks and Winiecki.

burden to prove that their infringement was innocent. If they were to sustain their burden, the lower range of statutory damages would be $200 rather than $750 per work infringed. *Id.*

But the Zimpriches are not innocent infringers. The Zimpriches contend that they acquired six of plaintiffs' photos from AW Artworks, LLC, and one of plaintiffs' photos from Jessie Winiecki. The Zimpriches assumed that because both AW Artworks and Winiecki were in the sports photo business and they knew that the Zimpriches were in the sports memorabilia business, that they would not have offered those photographs without having cleared the rights to reproduce them. But the Zimpriches point to no affirmative statement by anyone concerning the right to reproduce these photos. Nothing in the emails from AW Artworks implies that the right to reproduce the photos had been secured.[5] The Zimpriches point to no inquiry that they made concerning the right to reproduce the photos. The Zimpriches did not explain how much they paid for the images, or provide any other contextual information that would support the idea that a reasonable person would assume that whatever they bought from AW Artwork would include reproduction rights. In sum, the Zimpriches cannot show that they are innocent infringers merely because they assumed that their photo sources would not sell them images without reproduction rights.

The next question is whether Zimpriches are willful infringers, which does not follow as a matter of logical necessity from the conclusion that they are not innocent infringers. If plaintiffs can sustain their burden to show that the Zimpriches are willful infringers, they will be entitled to a higher award of damages. Willful infringement will raise the statutory cap from $30,000 to $150,000 per work infringed. 17 U.S.C. § 504(c)(2). But even if plaintiffs' claim for damages

---

[5] For the most part, the emails from AW Artworks simply attach images. The only statement in those emails is: "These are some new images I got, not the one you requested, they are on the way but let me know if you want any of these." Dkt. 121-1.

does not reach those heights, they will still receive higher damages for willful infringement than for non-willful infringement.

Willfulness is a factual determination and the Copyright Act does not define the term. 17 U.S.C. § 504(c)(2); *Wildlife Exp. Corp.*, 18 F.3d at 511. However, an infringer acts willfully if it "knows that its conduct is an infringement or if the infringer has acted in reckless disregard of the copyright owner's right." *Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010, 1020 (7th Cir. 1991) (abrogated on other grounds). Willful blindness counts as knowledge in copyright law, as in other areas. *In re Aimster Copyright Litig.*, 334 F.3d 643, 650 (7th Cir. 2003). Thus, if the Zimpriches avoided full knowledge concerning their infringement, they are willful infringers.

Plaintiffs contend that the Zimpriches demonstrate willfulness in two ways. First, the Zimpriches acquired high resolution copies of plaintiffs' photos by setting up an account with Getty Images, buying restrictive but inexpensive Editorial-Newspaper licenses, and then intentionally exceeding the scope of the licenses. The Zimpriches contend that this does not demonstrate willfulness, because they were simply following the instructions of their friend, Paul Leister, the owner of Sports Plus. Because Leister was in the same business as the Zimpriches, they assumed he had instructed them to take the right license for their commercial use.

The undisputed facts demonstrate that the Zimpriches were either aware of the restrictions of the Editorial-Newspaper license or that they were willfully blind to those restrictions. The Zimpriches do not dispute that they were aware that they needed some form of license or authorization to use third-party photos on their commercial products. To acquire copies of plaintiffs' photos from Getty Images, Dan Zimprich selected a license type from a menu of choices. In the process, the Getty Images website displayed a succinct summary of the restrictions applicable to the selected license type. In the case of the Editorial-Newspaper license, the website described the Editorial-Newspaper license as covering use "[i]nside of a

newspaper. (No advertising, promotion or commercial use of any kind.)" To complete the transaction, Dan Zimprich had to agree to accept the terms of the license by clicking a checkbox. The Zimpriches concede that the full license agreement was emailed to them after each transaction, but they did not read the actual license agreement. But even if the Zimpriches did not read the license agreement, they turned a blind eye to the cascade of information from Getty Images informing them that they were acquiring only the right to use plaintiffs' photos on the inside of a newspaper. The Zimpriches—who are after all in the business of selling reproductions of copyrighted works—are not entitled to stick their heads in the sand concerning rights to the works they reproduce and sell. The undisputed facts show that the Zimpriches were willful infringers with respect to the photos they acquired from Getty Images.

Willfulness is a closer call with respect to the photos they acquired from AW Artworks and Winiecki. The court will accept the Zimpriches declaration statements that they thought they were authorized to reproduce those photos, although correspondence from AW Artworks's owner casts serious doubt on this. But, unlike in the case of Getty Images, plaintiffs can point to no information that the Zimpriches must have willfully ignored that would have rebutted their naïve assumptions. Accordingly, at this point, whether the Zimpriches willfully infringed the copyrights to the photos they acquired from AW Artworks and Winiecki is an open question and plaintiffs are not entitled to summary judgment that those seven photos were willfully infringed.

Plaintiffs contend that the Zimpriches demonstrated willfulness in a second way: by continuing to sell copies of the unauthorized reproductions after being explicitly notified of their infringement by service of this lawsuit on February 19, 2013. Dkt. 3 and Dkt. 4. The Zimpriches did not remove the allegedly infringing reproductions from their store until nearly a year later when this court entered a stipulated injunction on February 13, 2014. Dkt. 26. Once

this suit was filed, the Zimpriches knew that their use of plaintiffs' photographs was unauthorized. The Zimpriches have yet to mount any defense of arguable merit to plaintiffs' charge of infringement. Accordingly, after service of this suit, the Zimpriches acted with reckless disregard for plaintiffs' rights as copyright owners.

The advice of counsel defense does not save the Zimpriches. Advice of counsel, if properly requested and followed, can negate a culpable mental state. *United States v. Roti*, 484 F.3d 934, 935 (7th Cir. 2007); *see also Wildlife Exp. Corp.*, 18 F.3d at 513 (recognizing the advice of counsel defense in the context of willful infringement). But the Zimpriches cannot rely on an advice of counsel defense here for several reasons. First, the Zimpriches have not waived attorney/client privilege and disclosed their communication with Frank Colucci, the New York attorney on whose opinion they purport to rely. The assertion of an advice of counsel defense waives the privilege, because otherwise defendants could cherry-pick communications with counsel and disclose only those favorable to their defense of willfulness. Because the Zimpriches have not waived the privilege with respect to their communications with Colucci, they cannot rely on his advice to defend plaintiffs' charge of willfulness.

A second reason the Zimpriches cannot rely on Colucci's opinion is that they have not disclosed enough information to evaluate whether Colucci's opinion is one that can reasonably be relied upon. The Zimpriches submit Colucci's declaration, in which he attests that it was his opinion that they did not need to stop selling the accused materials unless a court so ordered. Dkt. 119. But Colucci does not say what he reviewed to form this opinion, and he does not disclose his reasoning. From the court's perspective now, Colucci's opinion seems conclusory and quite misguided. It would take much more than what Colucci stated in his declaration to persuade the court that the Zimpriches were relying on competent legal advice and were therefore not willful infringers. In fact, Colucci's declaration does not even state that he advised

14

the Zimpriches that they could or should continue selling the accused products. Colucci states only that he "never directed the Zimpriches to stop selling" the products. *Id.*

In sum, the Zimpriches are not entitled to the advice of counsel defense because they have not waived attorney client privilege, and they cannot demonstrate that their reliance on Colucci's advice was reasonable and in good faith. *United States v. Philpot*, 733 F.3d 734, 745 (7th Cir. 2013). Accordingly, plaintiffs have carried their burden to show that once the complaint was served on the Zimpriches, their infringement of plaintiffs' photos that remained on display was willful.

### B. Sports Plus's motion for summary judgment

Sports Plus has moved for summary judgment that any infringing conduct it may have committed was not willful. It admits to purchasing and displaying at least one infringing reproduction of Stluka's photo of Bucky Badger doing pushups at a University of Wisconsin sporting event, but claims that it had no knowledge of plaintiffs' copyright and no reason to suspect infringement until this lawsuit was filed. The import of the motion for partial summary judgment is that it would limit Stluka's potential recovery to ordinary statutory damages instead of the heightened damages for a willful violation.

As discussed above, willful infringement of a copyright under 17 U.S.C. § 504(c)(2) is a factual determination. *Wildlife Exp. Corp.*, 18 F.3d at 511. An infringer acts willfully "if the infringer knows that its conduct is an infringement or if the infringer has acted in reckless disregard of the copyright owner's right." *Video Views, Inc.*, 925 F.2d at 1020.

According to Sports Plus, it did not know that selling canvases of plaintiffs' photos infringed plaintiffs' rights. The court is skeptical. A company like Sports Plus, in the business of selling reproductions of works protected under copyright law, should undertake some inquiry to

determine whether its inventory is authorized. An honest and competent inquiry would require more than relying on a seller's oral statement that "he paid a fee which allowed him to reproduce images onto the canvases." Dkt. 69, at 2. Nevertheless, plaintiffs have adduced no evidence to create a genuine dispute whether Sports Plus was aware that its actions were infringing. Plaintiffs have the burden to show that Sports Plus was willful and they completely lack evidence to support their position. Therefore, summary judgment for Sports Plus is appropriate.

**C. American Family's motion for summary judgment**

American Family intervened in this lawsuit to determine its obligation to provide insurance coverage and aa defense for the Zimpriches. It now moves for summary judgment, contending that it is not required to provide a defense for two reasons: (1) the Zimpriches waited too long to notify American Family of this lawsuit; and (2) the complaint is based on intentional acts by the Zimpriches, which are excluded from coverage.

The Zimpriches waited more than one year to notify American Family of this litigation. Under Wisconsin law, a delay of more than a year creates a presumption of prejudice to American Family. Wis. Stat. §§ 631.81, 632.26.[6] Prejudice is defined as "a serious impairment of the insurer's ability to investigate, evaluate, or settle a claim, determine coverage, or present an effective defense." *Neff v. Pierzina*, 2001 WI 95, ¶ 44, 245 Wis. 2d 285, 629 N.W.2d 177. Given the presumption, the Zimpriches bear the burden of demonstrating a lack of prejudice. Wis. Stat. §§ 631.81, 632.26. They make this showing for two reasons. First, most of the first

---

[6] Where the court exercises diversity jurisdiction, it applies Wisconsin state law to determine the substantive law at issue, in this case an insurance contract. *State Farm Mut. Auto. Ins. Co. v. Gillette*, 2002 WI 31, ¶ 26, 251 Wis. 2d 561, 577, 641 N.W.2d 662, 670.

year was taken up by motion practice in the Southern District of New York that had little to no impact on substantive issues. The Zimpriches notified American Family of the suit shortly after it was transferred to this court. Second, after it received notice, American Family did not move promptly to protect its interests. Instead, it waited more than five months to intervene in this case to contest coverage. As the Zimpriches contend, the case has moved slowly and American Family has not missed any meaningful opportunity to investigate, evaluate, or settle this case. American Family is correct that the Zimpriches bear the burden on the issue of prejudice. But if American Family did suffer some prejudice, it ought to be able to identify it. It has not done so. In light of American Family's own failure to move promptly after receiving notice, the court concludes that American Family has not been prejudiced by the Zimpriches' delay in providing notice of this suit.

As for the merits of the coverage issue: American Family contends that it owes no duty to defend the Zimpriches because none of the allegations of the complaint would be covered under the terms of their policy. Plaintiffs disagree.

The basic principles are well established, although their application to this case involves some subtlety. If even one claim in the complaint falls within the coverage afforded by the policy, American Family must defend the Zimpriches against the entire suit. *Doyle v. Engelke*, 219 Wis. 2d 277, 285, 580 N.W.2d 245 (1998). American Family's duty to defend is determined by comparing the allegations of the complaint to the terms of the policy. *Estate of Sustache v. Am. Family Mut. Ins. Co.*, 2008 WI 87, ¶ 20, 311 Wis. 2d 548, 751 N.W.2d 845. The nature of the claim asserted in the complaint governs; it does not matter whether the claim is meritorious. *Id*. ¶ 22.

The Zimpriches' policy provides coverage for "personal and advertising injury," which the parties agree is the only coverage implicated here. The pertinent part of coverage for "personal

and advertising injury" is for injury arising out of "[i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement.'" At this point in the case, it is apparent that the main thrust of plaintiffs' complaint is that defendants have made and sold infringing products, which would not fall within the scope of advertising injury. But the Amended Complaint includes an allegation that "Defendants also used Plaintiffs' works in advertising and marketing campaigns to promote their businesses and products." Dkt. 33, ¶ 28. Thus, the Amended Complaint includes a claim that would fall within the coverage afforded by the policy. The parties do not disagree about any of this.

But American Family contends that the exclusion for intentional acts by the insured applies. The policy excludes personal and advertising injury "[c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'" American Family contends that the plaintiffs allege *only* intentional conduct, and thus the Zimpriches' policy affords no coverage because the intentional acts exclusion applies. The parties apparently agree that the intentional acts exclusion would bar coverage for plaintiffs' fraud claim, which necessarily involves intentional conduct. The parties dispute whether the intentional acts exclusion would bar coverage for the copyright infringement claim.

The copyright infringement claim in the Amended Complaint includes a blanket allegation of willfulness against all defendants: "Defendants' unauthorized use of Plaintiffs' copyrighted work was willful, intentional, and/or reckless." Dkt. 33, ¶ 52. The specific allegations against the Zimpriches also include the allegations concerning their intentional conduct in setting up a Getty Images account and deliberately acquired copies of plaintiffs' photographs under false pretenses. The Amended Complaint thus clearly includes allegations of intentional conduct by the Zimpriches that would not be covered under the policy.

18

But the question is whether the complaint includes *any* allegations that would be covered. American Family contends that the answer is "no" because the Amended Complaint contains a blanket allegation that all the defendants' infringement was willful. According to American Family, if we assume that plaintiffs were to prove all the allegations of the complaint, the defendants' infringements would be intentional and thus excluded from coverage. But here is the problem: plaintiffs would *not* have to prove willfulness to prevail on their claim of copyright infringement. The question is whether the inclusion of an allegation of willfulness necessarily triggers the application of an intentional acts policy exclusion.

Although this question has not been directly addressed by either a Wisconsin appellate court or the Seventh Circuit, well-reasoned district court cases suggest that the answer is "no." *See, e.g, Capitol Indem. Corp. v. Elston Self Serv. Wholesale*, 551 F. Supp. 2d 711, 726 (N.D. Ill. 2008); *Cent. Mut. Ins. Co. v. Stunfence, Inc.*, 292 F. Supp. 2d 1072, 1082 (N.D. Ill. 2003). Intellectual property infringement is generally a strict liability claim. To prevail on a claim of copyright infringement, a plaintiff does not have to prove that the defendant knew anything about the plaintiff's copyright or that his actions would infringe. Even though willfulness is not a required element, plaintiffs in intellectual property cases routinely allege willfulness because showing willfulness commonly leads to some form of enhanced damages. Courts that have considered this issue have concluded that an allegation of willfulness does not implicate the intentional acts exclusion if the plaintiff could prevail on the underlying claim without proving that the insured acted "with the knowledge that the act would violate the rights of another." In other words, the intentional acts exclusion applies only if the plaintiff must prove intentional action to prevail on the claim against the insured.

In this case, plaintiffs could prevail on their claims of copyright infringement against the Zimprichs without showing that they knew their acts would violate plaintiffs' rights. The court

19

has already held that some of the Zimpriches infringement is willful, but that is of no consequence on the issue of American Family's duty to defend. The Amended Complaint includes allegations of non-willful infringement in the Zimpriches' advertising, and thus American Family has a duty to defend and is not entitled to summary judgment.

## CONCLUSION

Most of the important liability issues in this case have now been resolved. The only remaining issues are largely damages issues. The parties have not established exactly which of plaintiffs' photos were copied, by which defendants, on which dates, or the quantity of copies made. The court has allowed plaintiffs to add newly discovered photos to the lawsuit and still awaits information regarding these additional photos. Dkt. 170. The court will hold a status conference on December 18, 2014, to address the efficient resolution of these issues.

IT IS ORDERED that:

1. Plaintiffs Scott Boehm and David Stluka's motion for partial summary judgment that defendant Legends of the Field, LLC, infringed their copyrights and that defendants Dan Zimprich and Ciara Zimprich willfully infringed their copyrights, Dkt. 75, is GRANTED in substantial part, consistent with the opinion above.

2. Defendant Sports Plus's motion for partial summary judgment that its conduct was not willful, Dkt. 65, is GRANTED.

3. American Family Insurance's motion for summary judgment, Dkt. 70, is DENIED.

Entered this 17 day of December, 2014.

BY THE COURT:
/s/
JAMES D. PETERSON
District Judge